1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         NORTHERN DISTRICT OF CALIFORNIA
7
8    DERWIN REDDIC,                              No. C-10-1580 SI (PR)
9                 Plaintiff,                     **ORDER OF DISMISSAL WITH**
                                                 **PARTIAL LEAVE TO AMEND**
10         v.
11   M.S. EVANS, et al.,
12                 Defendants.
13   _____/
14                                 INTRODUCTION
15         In this pro se prisoner's civil rights action under 42 U.S.C. § 1983, Derwin Reddic alleged
16   claims for deliberate indifference to his safety, retaliation, and violation of his right to due
17   process at Salinas Valley State Prison (SVSP).   Defendants have moved (a) to dismiss the
18   deliberate indifference and retaliation claims for failure to exhaust administrative remedies, and
19   (b) to dismiss the due process claim for failure to state a claim upon which relief may be granted.
20   Reddic has not filed an opposition to Defendants' motion.   For the reasons discussed below,
21   Defendants' motion to dismiss will be granted.   The deliberate indifference and retaliation claims
22   will be dismissed without prejudice to Reddic filing a new action. The due process claim will
23   be dismissed with leave to amend.
24
25                                 BACKGROUND
26         In his first amended complaint, Reddic alleged that Defendant Ippolito was deliberately
27   indifferent to his safety by telling other inmates information about Reddic that caused at least
28   one other inmate to engage Reddic in a fight. He further alleged that when he complained,
     Defendant Ippolito and other SVSP officials retaliated against him for his use of the prison

United States District Court
For the Northern District of California

administrative grievance system by finding him guilty at a disciplinary proceeding against him. Finally, Reddic alleged that his due process rights were violated at the disciplinary hearing because the hearing officer refused to allow him to present a witness and found him guilty despite insufficient evidence to support such a finding.  The court liberally construed the first amended complaint and found that it stated cognizable § 1983 claims against Defendants for deliberate indifference to safety, retaliation, and violation of due process.

After Reddic had the altercation with the inmate who allegedly engaged him in a fight due to defendant Ippolito's alleged dissemination of information about him, Reddic received a CDC-115 rule violation report charging him battery on an inmate with a weapon.  At the disciplinary hearing, Reddic was found guilty.  He alleges that he was assessed a 360-day time credit forfeiture.  See First Amended Complaint, ¶ 28.  Reddic alleges that he filed an inmate appeal. In his original complaint, he alleges that the forfeiture of credits was restored during the inmate appeal process.  See Complaint, p. 2.   He does not allege that any other discipline – such as a SHU term -- was imposed as a result of the disciplinary decision.

In their dispositive motion, Defendants seek the dismissal of the deliberate indifference and retaliation claims for failure to exhaust administrative remedies, and seek the dismissal of the due process claim for failure to state a claim upon which relief can be granted.  Reddic has not opposed the motion.

**DISCUSSION**

A.     Motion To Dismiss For Non-Exhaustion

      1.     Legal Standard For Motion To Dismiss For Non-Exhaustion

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a).  In order to exhaust available

**United States District Court**
For the Northern District of California

administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. See id. § 3084.5; Woodford v. Ngo, 548 U.S. 81, 85-86 (2006).

Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Id. (citation omitted). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). The statute requires "proper exhaustion" of available administrative remedies. See Woodford v. Ngo, 548 U.S. at 93.

A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988). The court can decide factual issues in a jurisdictional or related type of motion because there is no right to a jury trial as to that portion of the case, unlike the merits of the case (where there is a right to a jury trial). See id. Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the exhaustion issue.

### 2.    Deliberate Indifference Claim

Defendants demonstrate that Reddic filed only one inmate appeal that received a director's level decision, and that appeal concerned only the disciplinary decision. Reddic did not exhaust the administrative remedies available to him for his claim that Lieutenant Ippolito was deliberately indifferent to his safety. The inmate appeal Reddic filed did not mention

3

1  Defendant Ippolito making any comments to other inmates, nor did it raise any alleged

2  indifference to Reddic's safety. See Foston Decl., Ex. B.

3      In order to properly exhaust administrative remedies in California, a prisoner must "lodge

4  his administrative complaint on CDC form 602 and 'describe the problem and action requested.'"

5  Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)).

6  In light of the absence of any mention in the California regulation about the requisite level of

7  factual specificity, "'a grievance suffices if it alerts the prison to the nature of the wrong for

8  which redress is sought.'" Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting

9  Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)); see, e.g., Morton, 599 F.3d at 946

10  (grievance that complained of visitation restrictions, and did not mention an assault or theorize

11  that the visitation restriction imposed was related to the assault, was insufficient to put prison

12  officials on notice that staff conduct contributed to the assault); O'Guinn v. Lovelock

13  Correctional Center, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (grievance requesting a lower bunk

14  due to poor balance resulting from a previous brain injury was not equivalent to, and therefore

15  did not exhaust administrative remedies for, claims of denial of mental health treatment in

16  violation of the ADA and Rehabilitation Act). Reddic's inmate appeal about the disciplinary

17  proceeding and the punishment imposed did not alert the prison to the nature of the alleged act

18  of deliberate indifference by Ippolito.

19      Reddic alleged that he wrote a letter to the warden complaining about Defendant

20  Ippolito's behavior and stated that a CDC 602 inmate appeal form was enclosed with the letter.

21  His letter did not exhaust administrative remedies. The statute requires "proper exhaustion" of

22  available administrative remedies, Woodford v. Ngo, 548 U.S. at 93, and in California that

23  means pursuing an inmate appeal through to receipt of a director's level decision. Reddic's

24  alleged letter did not follow the mandatory appeal procedure. Defendants have therefore

25  demonstrated that the CDCR has no record that Reddic ever filed an inmate appeal that (a)

26  concerned the claim that Lieutenant Ippolito was deliberately indifferent to Reddic's safety and

27  (b) received a decision at the director's level before he filed this action.

28

**United States District Court**
For the Northern District of California

### 3.   Retaliation Claim

Reddic also did not exhaust the administrative remedies available to him for his claim that Lieutenant Ippolito and other SVSP officials retaliated against him for his use of the prison administrative grievance system by finding him guilty at the disciplinary hearing. See First Amended Complaint, ¶ 41-44. The administrative appeal Reddic filed did not mention Defendant Ippolito or any other SVSP officials basing their disciplinary decisions, or their review of such decisions, on Reddic's alleged letter and accompanying grievance to the warden complaining about Lieutenant Ippolito's behavior. See Foston Decl., Ex. B. Nor did the grievance address any CDCR employee harboring any sort of animosity towards Reddic. See id. Instead, the inmate appeal addressed only the alleged due process violations stemming from the disciplinary proceeding and the hearing officer's resulting judgment.

Reddic's inmate appeal addressing his concerns regarding the disciplinary proceeding was insufficient to "alert the prison to the nature of the wrong for which redress is sought'" as to his retaliation claim. See Griffin, 557 F.3d at 1120. Defendants have demonstrated that the CDCR has no record that Reddic ever filed an inmate appeal that (a) concerned Reddic's claim that Lieutenant Ippolito and other SVSP officials retaliated against him for his use of the prison administrative appeal system and (b) received a decision at the director's level before he filed this action.

Reddic did not exhaust administrative remedies for the deliberate indifference to safety and retaliation claims because he never received a director's level decision on those claims, as required for exhaustion of administrative remedies by a California prisoner.  Defendants have carried their burden to prove non-exhaustion of two of the three claims in this action.   Due to the differences between the unexhausted and exhausted claims, the deliberate indifference to safety and retaliation claims can be dismissed and the due process claim can proceed.  That is, the entire action need not be dismissed based on the non-exhaustion of just two of the claims. See Jones v. Bock, 549 U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal" rule); Lira v. Herrera, 427 F.3d 1164, 1175 (9th Cir. 2005).  The dismissal is without prejudice to him pursuing his deliberate indifference to safety and retaliation claims after he properly exhausts

administrative remedies for them, if he is still in custody, or filing a new action on those claims if he is not in custody.[1]

B.    Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief can be granted." A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570 (2007). The court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007), and must construe pro se pleadings liberally, Hebbe v. Pliler , 611 F.3d 1202, 1205 (9th Cir. 2010). The court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact, or unreasonable inferences. See Sprewell v. Golden State Warriors , 266 F.3d 979, 988, amended , 275 F.3d 1187 (9th Cir. 2001).

Prisoners retain their Fourteenth Amendment right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Although prison disciplinary proceedings do not afford a prisoner the full panoply of rights due to a defendant in a criminal proceeding, where serious rules violations are alleged and the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions and the sanctions are severe, the Due Process Clause requires certain minimum procedural protections. See id. at 556-57, 571-72 n.19.

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty.

---

[1]Reddic sent in a change of address notice stating he had been released from prison. If he is not in custody at the time he files a new action, the exhaustion requirement will not apply to him when he files that new action because the exhaustion statute applies only to an action brought "by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Reddic should note that, based on California Code of Civil Procedure 352.1(a), filing a new complaint on these charges would be timely for two years after the date he was released from custody. The fact that the exhaustion requirement will not apply if he files the action when he is out of custody does not excuse noncompliance with that requirement in this action which was filed while he was in prison. Cf. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006); McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance."  See Sandin, 515 U.S. at 477-87.[2] An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." Id. at 484, 487.

In determining whether a restraint is an "atypical and significant hardship," three guideposts have been identified to frame the inquiry: whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody; the duration of the condition and degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence.  See Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).  These factors need not all be present for there to be an atypical and significant hardship.  Cf.  Serrano, 345 F.3d at 1078 ("Rather than invoking a single standard for determining whether a prison hardship is atypical and significant, we rely on a 'condition or combination of conditions or factors'").

The issue presented by Defendants' motion to dismiss is whether any process was due in

---

[2]There is some uncertainty as to whether, in addition to a liberty interest of real substance, there also must be state statutes or regulations that narrowly restrict the power of prison officials to impose the deprivation in order for a procedurally protected liberty interest to be found.  Compare Sandin, 515 U.S. at 483-84 ("we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause"), and id. at 486 ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"), with Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life"). The court need not decide that question because Defendants do not assert that as a ground for dismissal.

**United States District Court**
For the Northern District of California

light of the punishment imposed.  As mentioned earlier, Reddic alleged in his first amended complaint that his due process rights were violated in the disciplinary proceedings when he was denied a requested witness and when he was found guilty on insufficient evidence.  Defendants argue that Reddic has not alleged that the disciplinary decision resulted in the deprivation of a constitutionally protected liberty interest, and therefore the Due Process Clause did not command that any procedural protections be provided to the inmate.  Defendants argue that <u>Sandin</u> requires dismissal of Reddic's due process claim because Reddic does not allege facts showing that he was subjected to a restraint that amounted to an atypical and significant hardship or that the decision inevitably affected the length of his sentence.  A 360-day credit forfeiture was the original discipline imposed on Reddic, but those forfeited time credits later were restored.  <u>See</u> Complaint, p. 2 (alleging "forfeiture of credits restored" after inmate appeal). With the restoration of the credits, it appears that the length of Reddic's sentence was unaffected. Reddic also has not alleged any other specific harm that resulted from the disciplinary decision. His allegation that he suffered "actual injuries, mental/emotional pain, humiliation and fear," First Amended Complaint, ¶ 40, does not suffice to plead an atypical and significant hardship. Defendants' motion to dismiss the due process claim will be granted because Reddic has failed to state a claim upon which relief may be granted for a due process violation.

The complaint will be dismissed with leave to amend the due process claim.  In his second amended complaint, Reddic must allege facts which show that the disciplinary decision subjected him to an atypical and significant hardship in relation to the ordinary incidents of prison life or affected the duration of his confinement.

Finally, the court makes two observations about the due process claim.  Reddic admits that he engaged in mutual combat with another inmate but alleges that he should not have been found guilty of battery on an inmate with a weapon (i.e., a knife).  <u>See</u> First Amended Complaint, ¶¶ 16, 23.  First, Reddic has come very close to pleading himself out of a claim about the sufficiency of the evidence.  He alleges that the evidence was insufficient to support the finding of battery on an inmate with a weapon.  However, he intimated that a knife had been found somewhere near the fighting inmates, as he alleged that he asked to have it fingerprinted,

see Complaint, p. 5 and First Amended Complaint,   ¶ 24.  Also, he originally alleged that the other inmate had "active bleeding from a cut/laceration or slash on the back of his hand," Complaint, p. 4, which would appear consistent with that inmate having been stabbed or slashed with a knife.   Because he did not repeat that wound allegation in his first amended complaint, and because the court must liberally construe pro se pleadings, the court is constrained to allow the challenge to the sufficiency of the evidence to proceed (assuming that plaintiff is able to amend to allege facts showing the deprivation of a constitutionally protected liberty interest). Second, Reddic alleges that he was not allowed to call inmate Bonds as a witness.  However, he alleges that the hearing officer "stipulat[ed] that my inmate witness ("Bonds") would say that I didn't batter inmate T. Wilson with a weapon."  First Amended Complaint, ¶ 28.  Reddic does not allege what additional testimony he would have obtained from inmate Bonds if Bonds had been called as a witness.  If Bonds should have been called but had nothing more helpful to say than that to which the hearing officer stipulated, it would appear that Reddic only would be entitled to nominal damages (i.e., one dollar) for such a violation.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. (Docket #17.) The alleged deliberate indifference and retaliation claims are dismissed without prejudice to Reddic filing a new action in compliance with any exhaustion requirement. The due process claim is dismissed with leave to amend to cure the deficiency identified in this order no later than **July 1, 2011.** Failure to amend will result in dismissal of the action.

IT IS SO ORDERED.

Dated: June 3, 2011

SUSAN ILLSTON
United States District Judge